Mary Jane CIARDELLA, Plaintiff,

v.

CARSON CITY SCHOOL DISTRICT; Carson City School District Board of Trustees; Harry Dickson, Superintendent, individually and in representative capacity; Mike de la Torre, Trustee; Marsha Grismer, Trustee; Rick Hanson, Trustee; Carl Swain, Trustee; Bill Furlong, Trustee; Frank Mathews, Trustee; Robey Willis, Trustee, Defendants.

No. Civil R–85–347 BRT.

United States District Court, D. Nevada.

Oct. 14, 1987.

Lawrence J. Semenza, Reno, Nev., for plaintiff.

Bruce R. Laxalt, Reno, Nev., for defendants.

## ORDER GRANTING SUMMARY JUDGMENT

BRUCE R. THOMPSON, District Judge.

The defendants Carson City School District, et al., have moved for summary judgment against the plaintiff Mary Jane Ciardella. The plaintiff is proceeding against the defendants on the basis of 29 U.S.C. § 206(d), 42 U.S.C. § 2000e, and 42 U.S.C. § 1983. The plaintiff began her employment with the Carson City School District (CCSD) on August 21, 1972, as a school bus driver. In December of 1973, she was transferred to the CCSD accounting office and assumed the duties of an account clerk trainee. After a period of one year she became an account clerk, and on July 1, 1975 she assumed the responsibilities of a senior account clerk. On July 1, 1977, she became a principal account clerk. On May 1, 1980, she was promoted to a newly created position of "Coordinator of Business and Finance." She held that position until her retirement on February 29, 1984. At the time of plaintiff's retirement, her salary was $22,996.00. At the time of her retirement, and for several years previously, plaintiff was the highest paid classified employee in the CCSD.

The plaintiff's dissatisfaction stems from the fact that, upon plaintiff's retirement, the position of Coordinator of Business and Finance was filled by a male, Mr. Doug Sever, at a salary of $34,000.00 per year. The plaintiff maintains that the disparity between Mr. Sever's salary and her own reflects sex discrimination against her.

It is undisputed that on May 6, 1982, plaintiff directed a memorandum to Superintendent Dickson in which she spoke of her anticipated retirement in February, 1983 (subsequently postponed to February,

1984). In this memorandum plaintiff stated, inter alia:

> With this in mind, I have long felt that I have been under-compensated for the amount of work and responsibility with which I have been charged. I have not said too much about this in the past because I realized the economic problems of the district and because I have been concerned with keeping costs down also. However, if it is necessary now to bring in a replacement, it will not be possible to find the caliber of person that has been mentioned for my salary of $21,312.00. It would therefore be my suggestion to budget at least $32,000 for this position for the coming year.

In November, 1983, plaintiff prepared a written job description of her position as Coordinator of Business and Finance. This detailed the duties and responsibilities of the position and was used in the Position Announcement published and circulated by the CCSD to solicit applications for the position being vacated by plaintiff. The terms of employment stated a salary range of $30,000 to $34,000 annually. Forty-three applicants responded. Preliminary screening eliminated all but nine, who took a written examination. Thereupon, three withdrew leaving six candidates, five men, including Sever, and one woman. These six were interviewed by a five-member interview panel. Plaintiff was one of the five. She rated Sever as her first choice and explained her rating of the female candidate in fourth place on the basis that she did not have the "maturity" and "presence" required to fill the position.

The position of Coordinator of Business and Finance in the CCSD is unique and sui generis. There is no other similar position in the establishment with which it may be compared.

The Equal Pay Act (29 U.S.C. § 206(d)(1)) reads:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex; ...

This statute is written in the present tense and on the face of it applies to employees employed simultaneously in the same establishment. Nevertheless, there is substantial precedent which countenances the application of the law to successive employees in the same position. *Peltier v. City of Fargo*, 533 F.2d 374 (8th Cir.1976); *Pearce v. Wichita County*, 590 F.2d 128 (5th Cir.1979); *Hodgson v. Behrens Drug Co.*, 475 F.2d 1041 (5th Cir.1973); *Gosa v. Bryce Hospital*, 780 F.2d 917 (11th Cir. 1986); *Brunetti v. Wal-Mart Stores, Inc.*, 525 F.Supp. 1363 (E.D.Ark.1981); *Francoeur v. Corron & Black Co.*, 552 F.Supp. 403 (S.D.N.Y.1982).

None of the cited cases, however, presents undisputed facts remotely similar to the present case.

The pretrial order entered in this case states the following, among others, as issues of fact:

> 5. Whether Mr. Doug Sever held a position substantively equal to the position held by Plaintiff prior to her retirement.

> 6. Assuming that Mr. Doug Sever and Plaintiff held substantively equal positions, whether the Defendant Carson City School District had a legitimate, non-discriminatory reason for paying Mr. Sever at a higher rate than was paid to Plaintiff, whether that reason was (a) a distinction in merit and qualifications as between Plaintiff and Mr. Sever, or (b) market demand for attraction of a person of the qualifications desired by the Carson City School District.

These are the principle issues for our consideration in resolving the motion for summary judgment.

The parties have spent a great deal of time arguing the evidence on the first issue. On the basis of the evidence at hand the court would hold that the evidence preponderates in favor of the CCSD. It is quite likely that the trier of fact would find that the job performed by Sever required additional skills and substantial additional duties and responsibilities as compared with the skills and duties and responsibilities required of plaintiff. We cannot forget, however, that this is a motion for summary judgment. We recognize that the Equal Pay Act compares the actual duties involved and does not turn on differences in job descriptions, prior training or other factors. *Spaulding v. University of Washington,* 740 F.2d 686 (9th Cir.1984); *Patkus v. Sangamon-Cass,* 769 F.2d 1251 (7th Cir.1985); *EEOC v. Mercy Hospital and Medical Center,* 709 F.2d 1195 (7th Cir.1983); 29 C.F.R. (1983) § 800.121. But this is a rule of decision, not of evidence. The evidence is that Sever applied for a job that required the same job requirements and performance that plaintiff had fulfilled for three and a half years. This creates a genuine disputed issue of material fact. The trier of fact may conclude that this was the job Sever did and that the evidence of claimed additional substantial responsibilities is either insignificant or pretextual.

On the other hand, the evidence on the sixth factual issue is undisputed and dispositive. The fourth exception in the Equal Pay Act is a payment "differential based on any other factor other than sex." The regulations treat of these exceptions. The examples given are intended to be illustrative, not exclusive. (29 C.F.R. (1983) § 800.145). The recognition of the "red circle principle" as permitting a wage differential (§§ 800.146 and 800.147) is particularly illuminating for its acknowledgement of job market conditions and economic facts as justifications. The red circle principle was involved in *Gosa v. Bryce Hospital,* 780 F.2d 917 (11th Cir.1986), and the court had this to say:

Because Congress concededly intended to include the practice of 'red circling' as a section 206(d)(1)(iv) 'factor other than sex' to explain a wage differential, the question is what Congress intended when red circling only accounts for part of the discrepancy. There is no evidence of congressional intent in the Act, its legislative history, or in the accompanying regulations, to prohibit a decision that a male can be used as a comparator when it is clear what wage he would be receiving had his wage not been 'red circled.' Nor is there any indication that Congress intended that red circling was an 'all or nothing' defense which either completely excused the disparity or did not excuse any of it. The purpose of the Equal Pay Act is broadly remedial, *Laffey v. Northwest Airlines, Inc.,* 740 F.2d 1071, 1080–81 (D.C.Cir.1984), *cert. denied,* 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 951 (1985) and *the flexibility of the red circling concept has been preserved in anticipation of the need to reconcile legitimate business necessities with the Act's purpose.*

(Emphasis supplied).

There are four Ninth Circuit precedents of particular interest. In *Padway v. Palches,* 665 F.2d 965 (9th Cir.1982), the court affirmed a summary judgment for the employer on an Equal Pay Act claim by identifying three documentary exhibits which explained the pay differential between a female and two male administrators saying: "It shows how their actual salaries were reached and why they are different. The three documents together present a clear and coherent explanation that is not controverted by any other evidence.... The documents show that one of these was appointed to step 3 because of his previous experience and because he was considering other job prospects." Later that year in *Kouba v. Allstate Ins. Co.,* 691 F.2d 873 (9th Cir.1982), the court discussed at length the "any other factor other than sex" exception to the equal pay requirement. The court made the following points, among others: (1) "But while Congress fashioned the Equal Pay Act to help cure long standing societal ills, it also in-

tended to exempt factors such as training and experience that may reflect opportunities denied to women in the past"; (2) "The Equal Pay Act concerns business practices. It would be nonsensical to sanction use of a factor that rests on some consideration unrelated to business. An employer thus cannot use a factor which causes a wage differential between male and female employees absent an acceptable business reason"; (3) "The Equal Pay Act entrusts employers, not judges, with making the often uncertain decision of how to accomplish business objectives"; (4) "Accordingly, no court or other authority has inferred a job-evaluation requirement. We, too, reject that limitation on the 'factor other than sex' requirement." Another equal pay case, *Hein v. Oregon College of Education,* 718 F.2d 910 (9th Cir.1983), adds further clarification to the "factor other than sex" requirement. The court accepted a finding that pay differentials could be justified because of the higher wages paid to male teachers when they began their employment, if the employer is able to justify the original salary disparities by "legitimate institutional interests."

In *Foster v. Arcata Associates, Inc.,* 772 F.2d 1453 (9th Cir.1985), the court emphasized that while Title VII coverage is much broader than the Equal Pay Act, "when a Title VII claimant contends that she has been denied equal pay for substantially equal work, as here, Equal Pay Act standards apply."

The foregoing principles as applied to this case show that plaintiff has no case. The documentary evidence here is more unequivocal than that in *Padway, supra.* Here, in preparation for retirement, plaintiff informed the superintendent and school board that to obtain a replacement for her the economics of the situation, that is, the job market, would require an offer of compensation of approximately $10,000 more per year than she was receiving. This recommendation was acted upon. Plaintiff participated in the preparation of the Position Announcement, was a member of the selection interview panel, and personally endorsed the selection of Sever in lieu of a female applicant. We are not suggesting that this scenario was orchestrated by plaintiff with hidden motives of preparing an equal pay action, but it does seem obvious that the differential between her compensation and that paid to Sever was based on a factor other than sex. The sex of the applicant had nothing to do with it. The economics of the market place dictated the result.

Plaintiff also pleads for relief under Title VII, 42 U.S.C. § 2000e. This is a disparate treatment case. Proof by plaintiff of a discriminatory motive is an essential element of such a case. *Foster v. Arcata Associates, Inc., supra; Spaulding v. University of Washington, supra.* This record is devoid of any evidence that defendants discriminated against plaintiff because of her sex.

In consideration of the premises,

IT HEREBY IS ORDERED that defendants' motion for summary judgment is granted with the force and effect that this action is hereby dismissed with prejudice.