UNITED STATES COURT OF APPEALS
**Filed 1/10/97**
FOR THE TENTH CIRCUIT

———

WILLIAM E. SLOAN,                          )
                                           )
    Plaintiff-Appellant,               )
                                           )
v.                                         )        No. 95-3354
                                           )     (D.C. No. 92-1014)
THE BOEING COMPANY,                        )      (Dist. of Kansas)
                                           )
    Defendant-Appellee.                )

———

**ORDER AND JUDGMENT**[*]

———

Before **PORFILIO, BARRETT, and EBEL,** Circuit Judges.

———

William E. Sloan (Sloan) appeals from the district court's grant of summary judgment in favor of the Boeing Company (Boeing) on his age discrimination in employment claims and the district court's judgment in favor of Boeing on Sloan's sex and race discrimination in employment claims.

Facts

Sloan is a white male in his early fifties who, at the time he was discharged, held the position of Quality Assurance Superintendent-Tooling at Boeing in Wichita, Kansas. Sloan

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of Tenth Cir. R. 36.3.

worked for Boeing from 1962 through his termination on September 11, 1990, with the exception of a relatively brief period of time between 1969 and 1973.

On May 5, 1989, Gloria Stallworth (Stallworth), a black female employee, was promoted to lead Machine Shop Inspector. Stallworth was not management's choice for the position, but received the promotion as a result of a union grievance she won against Boeing.

On January 10, 1990, Stallworth filed a complaint with Boeing's Equal Employment Opportunity Department claiming that she had received "improper and no specific training for [her] lead position," (Appellees' Supplemental Appendix, Vol. II at 183); Kalinowski, her immediate supervisor, was telling people that she was "dumb" and "doesn't know what to do," id. at 186; and her crew members were "everyday telling [her that] they heard [she] was going to be busted back." Id. at 183. Sharai McConico (McConico), head of Boeing's EEO Department, assigned Mike Bailey (Bailey) to investigate Stallworth's complaint. After interviewing selected co-workers of Sloan and Stallworth, Bailey concluded that Sloan tolerated and condoned a "negative environment for females and blacks" where "derogatory racial and sexual comments abound" and that Sloan undertook an "overt, intentional series of events . . . with the specific purpose of depriving [Stallworth] of the opportunity to succeed in her work environment because of her race and sex." Id. at 373a. After reviewing Bailey's conclusions and recommendation that Sloan be terminated, Dave Berry (Berry), the Director of Quality Assurance, ordered Sloan's termination for violation of company rules. Sloan was officially terminated on September 11, 1990.

On October 1, 1990, Sloan filed a complaint with the Kansas Commission for Civil Rights (KCCR) and the Equal Employment Opportunity Commission (EEOC) alleging discriminatory discharge. (Appellant's Appendix, Vol. I at 138-41). On November 27, 1990, he filed a supplemental complaint alleging discriminatory failure to promote on the basis of age. Id. at 143-44.

On January 10, 1992, Sloan filed this action against Boeing and four individual Boeing employees alleging multiple causes of action, including, (1) discriminatory discharge in violation of Title VII, 42 U.S.C. §§ 2000e et seq. and (2) failure to promote because of his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 et seq.[1]

Both parties moved for summary judgment and on April 1, 1994, the district court granted Boeing's motion for summary judgment on Sloan's ADEA claims. The district court concluded that although Sloan established a prima facie case of age discrimination, he did not show that Boeing's reasons for not promoting him were pretextual.[2]

July 10, 1995, through July 14, 1995, Sloan's remaining claim of reverse race and/or sex discriminatory discharge was tried to the court. On September 29, 1995, the district court

---

[1]     Although Sloan raised multiple issues in the district court, he appeals only the district court's adverse decisions with respect to his ADEA claims and his discriminatory discharge claim. Therefore, these are the only claims we will address.

[2]     The district court initially determined that two of Sloan's ADEA claims were barred by the statute of limitations. (Appellant's Appendix, Vol. II at 442). However, the district court went on to analyze each of Sloan's claims and conclude that Sloan failed to provide any evidence of pretext with respect to all three claims. Id. at 443.

found that although he established a prima facie case of reverse discrimination, he failed to meet his burden to prove that Boeing did not believe the racial and sexual harassment claims made against him and he failed to prove that the real reason he was terminated was due to his race and/or sex. (Appellant's Appendix, Vol. IV at 1506).

On appeal, Sloan contends that the district court erred (1) in granting summary judgment in favor of Boeing on his failure to promote ADEA claims, and (2) by finding that he failed to prove his discharge was the result of racial or sexual discrimination.

### Discussion

#### A. ADEA Failure to Promote Claims

Sloan contends that the district court erred in granting summary judgment in favor of Boeing on his failure to promote claims. Sloan asserts that the district court erred in finding that he failed to demonstrate pretext for Boeing's failure to promote him and in construing facts in favor of Boeing, the moving party, on summary judgment.

The district court granted summary judgment in favor of Boeing on Sloan's age discrimination claims, finding that although he was sufficiently qualified for the promotions to at least raise a prima facie inference, he did not provided any evidence of pretext. (Appellant's Appendix, Vol. II at 443).

"We review the grant or denial of summary judgment de novo, applying the same legal standard used by the district court." Wolf v. Prudential Ins. Co. of Am., 50 F.3d 793, 796 (10th Cir. 1995). "Summary judgment is appropriate if the pleadings, depositions,

- 4 -

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. If there is no genuine issue of material fact in dispute, then we next determine if the substantive law was correctly applied by the district court." Id. (internal citations omitted).

Sloan based his ADEA age discrimination claims on Boeing's failure to promote him on three separate occasions: (1) on January 27, 1989, when Tom Lindsay was promoted to third-level manager over tooling; (2) on December 15, 1989, when Gary Booker (Booker) was promoted to third-level manager in charge of 737 Assembly Quality Assurance; and (3) on October 19, 1990, when Stan Guhr (Guhr) was promoted to third-level manager of Procurement Quality Assurance.[3]

The ADEA requires that a plaintiff file age discrimination charges within 300 days after the alleged discriminatory act occurred. 29 U.S.C. § 626(d)(2).[4] Sloan filed his original

---

[3]     Although Guhr's promotion officially occurred after Sloan was terminated, Sloan raised an issue of fact regarding when Guhr's promotion effectively occurred. The district court concluded that to the extent a question of fact existed as to the effective date Guhr was promoted, it was not material in light of its disposition. (Appellant's Appendix, Vol. II at 441 n.10). We agree and will not consider the question further.

[4]     The 300 day limitation applies in those states that have statutorily prohibited discrimination. See Aronson v. Gressly, 961 F.2d 907 (10th Cir. 1992). Otherwise the limit is 180 days. 29 U.S.C. § 626(d).

complaint with the KCCR and the EEOC on October 1, 1990, and amended his complaint on November 27, 1990, to include his ADEA failure to promote claims. Assuming without deciding that his amended complaint relates back to the original filing date of October 1, 1990, Sloan's ADEA claims are timely only with respect to discriminatory acts occurring after December 4, 1989. Therefore, Sloan's first claim regarding the promotion of Tom Lindsay in January, 1989, is untimely and barred by the statute of limitations. Since Sloan's remaining two claims occurred after December 4, 1989, we must consider whether a genuine issue of material fact exists which would preclude summary judgment.

"An employee alleging intentional discrimination under the ADEA must prove that age was a 'determinative factor' in the defendant employer's action toward him." Cooper v. Asplundh Tree Expert Co., 836 F.2d 1544, 1547 (10th Cir. 1988). Age need not be the sole reason for the employer's action, but the plaintiff must show that age "made a difference" in the decision. Id. ADEA plaintiffs may establish discrimination indirectly through the three-part framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny. MacDonald v. Eastern Wyo. Mental Health Ctr., 941 F.2d 1115, 1119 (10th Cir. 1991). Under the McDonnell Douglas test, the plaintiff bears the burden of establishing a prima facie case of discrimination. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). Establishment of a prima facie case creates a presumption of unlawful discrimination, requiring a defendant to come forward with evidence of a legitimate nondiscriminatory reason for the challenged action. MacDonald,

941 F.2d at 1119. If the defendant presents a legitimate nondiscriminatory reason for its employment decision, "the presumption of discrimination established by the prima facie showing 'simply drops out of the picture.'" Ingles v. Thiokol Corp., 42 F.3d 616, 621 (10th Cir. 1994) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993)). "The plaintiff must then offer evidence that age was a determining factor in the challenged decision by either showing that the defendant's proffered reasons were really a pretext for age discrimination or by producing direct evidence of age discrimination." Jones v. Unisys Corp., 54 F.3d 624, 630 (10th Cir. 1995). At the summary judgment stage, if the plaintiff establishes a prima facie case and produces evidence supporting a finding that "defendant's alleged nondiscriminatory reasons for the employment decisions are pretextual, the case should go to the factfinder." Ingels, 42 F.3d at 622. Therefore, we must determine whether Sloan established a prima facie case on any one of his claims and, if so, whether he produced sufficient evidence to support a finding that Boeing's reasons for not promoting him were pretextual.

In order to establish a prima facie case of discriminatory failure to promote under the ADEA, a "plaintiff must show that he (1) was within the protected age group at the time of the failure to promote; (2) was qualified for promotion; (3) was not promoted; and (4) was passed over for an available promotion in favor of someone younger." Furr v. AT & T Technologies, Inc., 824 F.2d 1537, 1542 (10th Cir. 1987).

It is undisputed that Sloan was over 50 years of age at the time of Booker's and Guhr's promotions, well within the protected age group; he was not promoted; and Booker and Guhr were younger. The critical question is whether he was qualified for the promotions. In support of his assertion that he was qualified for the promotions, Sloan proffers his: considerable work experience with Boeing, 23 years; managerial experience; outstanding technical skills; 377 hours of additional training; and various special assignments. (Appellant's Appendix, Vol. I at 128). Boeing disputes that these credentials qualified Sloan for the promotions; however, it has not presented any evidence regarding which specific qualifications were required, if any, for the contested positions. Thus, Sloan established sufficient evidence to raise a prima facie case of age discrimination on his failure to promote claims. See Reynolds v. Schools Dist. No. 1, Denver, Colo., 69 F.3d 1523, 1535 (10th Cir. 1995) (we "address an employer's explanations for its actions in subsequent stages of the McDonnel Douglas, inquiry and allow employees to clear the prima facie hurdle without countering those explanations"); Kenworthy v. Conoco, Inc., 979 F.2d 1462, 1470 (10th Cir. 1992) (plaintiff "could make a prima facie showing through credible evidence that she was qualified for the position she sought, even if that evidence was disputed by her employer"). However, in order to survive a motion for summary judgment, it is insufficient for Sloan merely to establish a prima facie case. The burden now shifts to Boeing to present legitimate nondiscriminatory reasons for it employment decisions.

Boeing explains that Booker and Guhr were promoted over Sloan because they were more highly qualified for the positions. Boeing asserts that: Booker and Guhr had management experience in their respective areas; Booker and Guhr both had substituted for their predecessors on numerous occasions and, thus, had actual experience as third-level managers in their respective areas; Sloan had no management experience in either 737 Assembly or Procurement; Sloan had difficulty working with people due to his "abrasive personality," and Guhr had a higher level of education than Sloan. (Appellees' Supplemental Appendix, Vol. I at 4-5, 8-9, 15, & 23). In addition, Guhr and Booker were ranked higher than Sloan on Boeing's totem ranking second-level managers; Guhr was second, Booker third, and Sloan ninth. Id. at 8-9.

Once the presumption raised by the prima facie case is rebutted by nondiscriminatory reasons justifying the employer's actions, the presumption of discrimination drops out of the picture and the factual inquiry proceeds to a new level of specificity. Hooks v. Diamond Crystal Specialty Foods, Inc., 997 F.2d 793, 798 (10th Cir. 1993).

> The plaintiff may show discrimination either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. The court must still make a judgment as to whether the evidence, interpreted favorably to the plaintiff, could persuade a reasonable jury that the employer had discriminated against the plaintiff. If no facts related to the pretextuality of the defendant's action remain in dispute, summary judgment is appropriate.

Id. (internal citations and quotations omitted). The burden once again shifts back to Sloan to allege facts which show Boeing's reasons are pretext for age discrimination.

To rebut Boeing's reasons for not promoting him, Sloan relies on (1) statements by Keith Newman (Newman) that management wanted to "get rid of the old guys" and that age was "discussed" in ranking managers on the totem, Appellant's Appendix, Vol. I at 368, and (2) a form listing age as a factor in ranking managers which Sloan asserts was used by Boeing. Id. at 153. Sloan's reliance is misplaced.

After a careful review of the record, we hold that Sloan has not created a genuine issue concerning the sincerity of Boeing's proffered reasons for failing to promote him. Sloan has failed to produce evidence that could persuade a reasonable factfinder that Boeing discriminated against him on the basis of age.

First, Newman's statement that management wanted to "get rid of the old guys" was made in the context of early retirement incentives. By his own words, Newman explained that "the statement was made when they [corporate management] were talking about the reduction in force and the golden handshake and early out and changes in the plan for retirement offers and that there was an offer coming out that was going to be directed at encouraging some of the older guys to go." (Appellant's Appendix, Vol. I at 368). See also (Appellees' Supplemental Appendix, Vol. I at 89-90). Boeing's offer of early retirement incentives or "golden handshakes" to its older management is irrelevant to Sloan's failure to receive either the Booker or the Guhr promotion unless Sloan demonstrated a nexus exists between these allegedly discriminatory statements and the failure to promote him. See Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 531 ("Isolated comments, unrelated to the

challenged action, are insufficient to show discriminatory animus in termination decisions."). Sloan has not demonstrated such a nexus. Additionally, although Newman stated that age was "discussed" in ranking second-level managers on the totem, he did not state that it was used in ranking Sloan or in making the final promotion decisions at issue. (Appellant's Appendix, Vol. I at 368). In fact, Newman, who was actively involved in the promotions of Booker and Guhr, stated that age was not a factor and was not discussed in making the contested promotion decisions. (Appellees' Supplemental Appendix, Vol. I at 23, 81-87).

Second, Sloan relies heavily on the fact that age is a category listed on the ranking form he produced and that, if age is not considered, he was the most qualified individual based on the remaining categories. However, Sloan has not presented any evidence that this form was used by Boeing in ranking him lower than Booker and Guhr on the totem or in the promotion decisions. Additionally, Berry identified that he had seen several matrix forms similar to Sloan's, but that Boeing did not use that particular form nor was it published by Boeing. (Appellant's Appendix, Vol. I at 158-59). Berry stated Boeing was attempting to create such a matrix, but had not developed a satisfactory one yet. Id.

Accordingly, we hold that the district court did not err in entering summary judgment on the grounds that Sloan failed to present any credible evidence on the issue of pretext.

B.  Title VII Reverse Discrimination Claims

Sloan contends that the district court erred in concluding that he failed to show that Boeing's reasons for terminating him were pretextual.[5]

"The ultimate factual determination of whether the employer's decision was motivated by intentional discrimination based upon protected class characteristics is for the trier of fact." Elmore v. Capstan, Inc., 58 F.3d 525, 530 (10th Cir. 1995). We review the district court's findings of fact, whether based on oral or documentary evidence, under the clearly erroneous standard. Id. A finding of fact is not clearly erroneous unless it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made. Id. at 531. Under this standard, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. Bessemer City, N.C., 470 U.S. 564, 574 (1985).

The district court found that under Notari v. Denver Water Dept., 971 F.2d 585 (10th Cir. 1992), Sloan presented sufficient evidence to support a reasonable inference that his and Stallworth's race and/or gender played an impermissible role in Boeing's investigation of Stallworth's complaint and its decision to terminate him. (Appellant's Appendix, Vol. I at

---

[5] In support of his contention, Sloan asserts that the district court abused its discretion by limiting the inquiry to whether Bailey and McConico knew their investigation was flawed rather than looking at whether those empowered to discipline him knew the investigation was flawed. However, a review of the district court's orders reveals that the inquiry was not limited to Bailey and McConico. Thus, there could be no "abuse of discretion."

439-40). After a trial to the bench, the district court found that Bailey's investigation of Stallworth's complaint was seriously flawed and that the flaws carried over into the decision-making process which ended in Sloan's termination. (Appellant's Appendix, Vol. IV at 1500-03). However, the district court concluded that Boeing's reasons for terminating Sloan were not false and that Sloan failed to meet his burden to prove that Boeing did not believe the racial and sexual harassment allegations made against him. Id. at 1506.

Sloan's arguments focus on the veracity of Stallworth's complaint and the handling of the investigation by Bailey and McConico. However, that is not the relevant inquiry. The relevant inquiry is whether Boeing/Berry, Sloan's immediate supervisor who was responsible for the ultimate decision, reasonably believed the harassment and/or discrimination allegations contained in Bailey's report and acted on it good faith or whether Boeing/Berry did not actually believe the allegations but instead used them as a pretext for an otherwise discriminatory dismissal. See Waggoner v. City of Garland, Tex., 987 F.2d 1160, 1165 (5th Cir. 1993) ("the validity of the initial complaint is not the central issue . . .. The real issue is whether the employer reasonably believed the employee's allegations and acted on it in good faith."); Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) ("We can assume for purposes of this opinion that the complaining employees . . . were lying through their teeth. The inquiry . . . is limited to whether" plaintiff's supervisors believed he "was guilty of harassment, and if so, whether this belief was the reason behind [his] discharge.").

The district court considered this issue and found that Boeing reasonably believed Stallworth's allegations and that Sloan failed to show that Boeing's reasons for firing him were false. Based on our review of the record, we hold that the district court did not clearly err in finding that Sloan failed to show that, but for his race and/or sex, he would not have been fired.[6] Sloan's evidence, both at trial and at the summary judgment stage, focused on the flawed investigation. We agree with Sloan and the district court that the investigation of Stallworth's complaint was not conducted in an ideal manner and was most likely fraught with errors. However, Sloan failed to show that the determinative factor in his termination was his race and/or sex. In other words, Sloan failed to establish that Boeing did not reasonably believe Bailey's conclusions and terminated him based on his race/sex using Bailey's conclusions as a pretext.

**AFFIRMED.**

Entered for the Court:

James E. Barrett,
Senior United States
Circuit Judge

---

[6] Although Sloan and Boeing provide us with excerpts from the trial transcript, neither party identified who was testifying at any given time. Trial testimony is not useful when we cannot determine who is testifying.